**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

TODD WILLIAM HORTON,

          Plaintiff,

    v.

KILOLO KIJAKAZI, Acting Commissioner of
Social Security,

        Defendant.

CIVIL ACTION NO.: 2:22-cv-21

## REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge Geoffrey S. Casher ("the ALJ" or "ALJ Casher") denying his claim for disability benefits. Plaintiff urges the Court to remand for reconsideration of the ALJ's decision. Doc. 17. Defendant asserts the Commissioner's decision should be affirmed. Doc. 18. For the following reasons, I **RECOMMEND** the Court **AFFIRM** the ALJ's decision. I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

## BACKGROUND

Plaintiff filed an application for Disability Insurance Benefits on October 12, 2019, alleging an initial onset date of October 1, 2017. R. 10.[1] The claims were initially denied on

---

[1]    A transcript of the entire proceedings before the Social Security Administration appears at Document Numbers 15-1 through 15-16. Although the transcript is broken into multiple PDF documents, each with its own CM/ECF docketing number, the transcript bears individual page numbers that run sequentially through the entire transcript. Record citations in this Report (identified with "R.") are to the individual transcript page numbers. For efficiency, no reference to the CM/ECF docketing number or the respective PDF page numbers is provided here.

March 6, 2020, and again upon reconsideration on November 15, 2020.  Id.  Plaintiff filed a written request for a hearing on November 23, 2020.  Id.  On June 17, 2021, ALJ Casher held a telephonic hearing, at which Plaintiff, who was represented by counsel, attended by telephone and testified.  Id.  John Myer, a vocational expert, also appeared at the hearing.  Id.  ALJ Casher denied Plaintiff's claim for disability after the hearing in a decision issued on June 28, 2021.  R. 16.  The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  R. 1.

Plaintiff, born on January 5, 1962, was 55 years old at the time of the alleged onset date and 59 years old at the time of the ALJ's decision in 2021.  R. 63.  He completed the 11th grade, obtained a GED, and previously worked as a machine operator at a woodchipper business named Coast Chips.  R. 63, 97, 216–218, 228.

## DISCUSSION

### I.      The ALJ's Findings

Title II of the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Act qualifies the definition of disability as follows:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]

42 U.S.C. § 423(d)(2)(A).  Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person meets the definition of disability.  20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The first step determines if the claimant is engaged in "substantial gainful activity."  Id. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id.  If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments.  Id. at 140–41.  If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three.  The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004), superseded on other grounds by 20 C.F.R. § 404.1520c.  If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled.  Yuckert, 482 U.S. at 141.

If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity to perform her past relevant work.  Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013).  A claimant's residual functional capacity "is an assessment . . . of the claimant's remaining ability to do work despite his impairments."  Id. at 693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)).  If the claimant is unable to perform his past relevant work, the final step of the evaluation process determines whether he is

able to make adjustments to other work in the national economy, considering his age, education, and work experience.  Phillips, 357 F.3d at 1239.  Disability benefits will be awarded only if the claimant is unable to perform other work.  Yuckert, 482 U.S. at 142.

Here, the ALJ followed this sequential process to determine Plaintiff met the insured status requirements of the Social Security Act to remain insured through September 30, 2023 and had not engaged in substantial gainful activity since his alleged onset date, October 1, 2017, through his date last insured.  R. 12.  At step two, ALJ Casher determined Plaintiff had one severe impairment: left eye light perception only.  Id.  At the third step, the ALJ determined Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of a listed impairment.  Id.

ALJ Casher found Plaintiff had the residual functional capacity ("RFC") to perform medium work, "except he could perform jobs that did not require good depth perception or peripheral vision with eyeglass protection or goggles in place."  R. 13–14.  The ALJ found Plaintiff could occasionally climb ramps, stairs, ladders, ropes, and scaffolds but should avoid hazardous machinery.  R. 14.

At the next step, the ALJ determined Plaintiff could not perform his past relevant work. R. 15.  The ALJ concluded at the fifth and final step Plaintiff could perform jobs, such as cleaner, counter supply worker, and laundry aide, all of which exist in significant numbers in the national economy.  R. 17.

## II.   Issues Presented

Plaintiff asserts three enumerations of error: (1) the ALJ failed to sufficiently develop the record with opinion evidence to inform his RFC determination; (2) the ALJ's RFC determination materially conflicts with his finding at step five, and he insufficiently developed vocational

expert testimony to address this conflict; and (3) the ALJ failed to support his subjective complaint analysis with substantial evidence.  Doc. 17 at 1.

## III.    Standard of Review

It is well-established judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence" and whether the Commissioner has applied appropriate legal standards.  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner.  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).  Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence.  Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved.  The evidence relied upon must be relevant evidence that a reasonable mind would find adequate to support a conclusion.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1260 (11th Cir. 2007).  The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence.  Dyer, 395 F.3d at 1210.  In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates the findings be vacated and remanded for clarification.  Cornelius, 936 F.2d at 1146.

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity.  Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard).  If the Commissioner fails either to apply correct

legal standards or to provide the reviewing court with the means to determine whether correct

legal standards were in fact applied, the court must reverse the decision.  Wiggins v. Schweiker,

679 F.2d 1387, 1389 (11th Cir. 1982), *overruling by statute on other grounds recognized by*

Lane v. Astrue, No. 8:11-CV-345-T-27, 2012 WL 292637, at *4 (M.D. Fla. Jan. 12, 2012).

**IV.    The ALJ Was Not Required to Further Develop the Record to Make an RFC Determination**

      Plaintiff argues the ALJ did not have a sufficient record before him to make an RFC

determination.  Doc. 17 at 4–5.  To sufficiently develop the record, Plaintiff contends the ALJ

should have sought a consultative ophthalmologist examination due to Plaintiff's testimony

about his hand-eye coordination and depth perception.  Id. at 4.  Plaintiff also contends the ALJ

failed to adequately develop the record according to Social Security Regulation (SSR) 16-3p.  Id.

at 5.  The record before the ALJ, Plaintiff points out, included notices indicating "some

facilities" could not provide records.  Id.  Plaintiff contends there is no "professionally[]rendered

RFC" determination in the record.  Id.  The Commissioner responds Plaintiff shows no

evidentiary gaps in the record that would have prevented the ALJ from making an informed RFC

decision, and Plaintiff failed to meet his burden of providing evidence to support his disability

claim.  Doc. 18 at 4–8.

      **A.    The ALJ Was Not Required to Seek a Consultative Evaluation**

      Although the ALJ generally has an obligation to develop the record, the ALJ did not err

by failing to order a consultative examination.  "Even though Social Security courts are

inquisitorial, not adversarial, in nature, claimants must establish that they are eligible for

benefits."  Ingram, 496 F.3d at 1269.  A plaintiff bears the burden of proving he is disabled and

is responsible "for producing evidence in support of his claim."  Ellison v. Barnhart, 355 F.3d

1272, 1275 (11th Cir. 2003).  The administrative law judge has a duty to develop the record

where appropriate but is not required to order a consultative examination as long as the record

contains sufficient evidence for the administrative law judge to make an informed decision.

Ingram, 496 F.3d at 1269 (citing Doughty v. Apfel, 245 F.3d 1274, 1281 (11th Cir. 2001)); see

also Castle v. Colvin, 557 F. App'x 849, 853 (11th Cir. 2014) (citing Ingram v. Comm'r of Soc.

Sec. Admin., 496 F.3d 1253, 1260 (11th Cir. 2007)).

Under the applicable regulations, an ALJ is only required to order a consultative

examination if there is some conflict, ambiguity, or other insufficiency in the medical evidence

that makes it necessary for the ALJ to obtain the examination.  See 20 C.F.R. § 404.1519a(a)(2)

("When we purchase a consultative examination, we will use the report from the consultative

examination to try to resolve a conflict or ambiguity if one exists.  We will also use a

consultative examination to secure needed medical evidence the file does not contain such as

clinical findings, laboratory tests, a diagnosis or prognosis necessary for decision."); 20 C.F.R. §

404.1519a(b) ("A consultative examination may be purchased when the evidence as a whole,

both medical and nonmedical, is not sufficient to support a decision on your claim.").  "The

failure of an ALJ to order a consultative examination, when such an evaluation is necessary to

make an informed decision, constitutes justifiable cause for a remand to the Commissioner."

Rease v. Barnhart, 422 F. Supp. 2d 1334, 1372 (N.D. Ga. 2006) (citing Reeves v. Heckler, 734

F.2d 519 (11th Cir. 1995)).

Plaintiff argues the ALJ was required to order a consultative evaluation because Plaintiff

testified he had trouble with hand-eye coordination and depth perception.  Doc. 17 at 4.

However, Plaintiff fails to explain how his testimony created a conflict, ambiguity, or

insufficiency in the medical evidence that required the ALJ to order a consultative examination.

The ALJ expressly considered Plaintiff's testimony in his decision and decided the medical

evidence did not support Plaintiff's description of the intensity, persistence, and limiting effects of his symptoms.  R. 14–15.  The ALJ cited records of an eye examination and state agency medical consultations.  Id.  Plaintiff does not point to anything conflicting or ambiguous within this medical evidence or any other record medical evidence.  Further, Plaintiff does not explain why the evidence is insufficient, other than pointing to correspondence in the record stating no medical records were available from UF Health between 2016 and 2020.  Id. at 19, 296–300.  But Plaintiff does not allege he was actually treated at UF Health during this time or that such treatment would have supported his position.

Plaintiff contends the records lacks a professionally[]rendered RFC," but contains only the "layperson RFC of the ALJ."  Doc. 17 at 5.  Plaintiff seems to take issue with the lack of medical opinions in the record and the lack of an RFC determination by the state agency consultants.  Id. at 4; Doc. 19 at 1–2.  However, Plaintiff fails to define or explain the term "professionally rendered RFC" or cite any authority requiring this.  Of course, the RFC is an administrative determination within the sole province of the ALJ, not a medical conclusion.  20 C.F.R. §§ 404.1527(d), 404.1546(c).  Also, there is no absolute requirement the ALJ consult medical opinions in formulating an RFC.  See Castle v. Colvin, 557 F. App'x 849, 854 (11th Cir. 2014) (quoting Manso-Pizarro v. Sec'y of Health & Hum. Servs., 76 F.3d 15, 17 (1st Cir. 1996)) ("[W]here the medical evidence shows relatively little physical impairment, an ALJ can render a commonsense judgment about functional capacity even without a physician's assessment.").

Plaintiff argues, in this case, unlike Castle, the issues are complex and "should be interpreted by a medical professional."  Doc. 19 at 2.  Courts sometimes require an RFC determination to be supported by a medical sources, based on the complexity of the medical conditions.  See, e.g., Cope v. Comm'r of Soc. Sec., No. 2:19-cv-310, 2020 WL 13594911 (M.D.

Fla. May 21, 2020) (holding ALJ should obtain a medical source statement or physician evaluation to determine RFC of claimant alleging mental impairments, joint and back pain, hypertension, and other impairments); Gray v. Berryhill, No. CV 15-00522, 2017 WL 1202667 (S.D. Ala. Mar. 31, 2017) (holding ALJ should obtain a physical capacities evaluation to determine RFC of claimant alleging fibromyalgia, anxiety, depression, obesity, back injuries, and arthritis in the arms, back, neck, hands and fingers).  Those cases, however, typically involve multiple disabling conditions and lengthy or complex records of diagnosis and treatment.  Here, the ALJ had a more straightforward task, analyzing one eye examination, two state agency consultations, and Plaintiff's testimony, all related to Plaintiff's vision and headaches.  This evidence was sufficient for the ALJ to render an administrative RFC determination. See Klucsarits v. Comm'r of Soc. Sec. Admin., No. 20-14376-CIV, 2022 WL 1664133, at *7 (S.D. Fla. Apr. 13, 2022) (citing 20 C.F.R. §§ 404.1546, 416.916) ("Plaintiff's attempt to distinguish [Castle] as involving only minor physical conditions or relatively little physical impairment . . . is not persuasive.  The determination of a claimant's RFC is an administrative determination left to the Commissioner.").  In sum, there is not a sufficient conflict or ambiguity in the record to require remand for the ALJ to order a consultative evaluation, despite Plaintiff's characterization of the issues.

**B.      SSR 16-3p Does Not Require the ALJ to Further Develop the Record**

Plaintiff argues the ALJ did not comply with SSR 16-3p because "the ALJ made his RFC determination without sufficiently informing himself as to Plaintiff's conditions."  Doc. 17 at 5.  The Commissioner argues SSR 16-3p does not apply here because it concerns the symptoms evaluation process, not the evidence required to support RFC decisions.  Doc. 18 at 7–8.  In his Reply, Plaintiff maintains the SSR does apply because the ALJ considered Plaintiff's treatment

or symptoms, and even if SSR 16-3p does not apply, "its principles should be applied by analogy . . . ."  Doc. 19 at 2.

Social Security Rulings "are binding on all components of the Social Security Administration."  20 C.F.R. § 402.35(b)(1).  SSR 16-3p provides guidance on evaluating "statements regarding the intensity, persistence, and limiting effect of symptoms in disability claims."  SSR 16-3p, 2017 WL 5180304, at *1; see also Green v. Soc. Sec. Admin., Comm'r, 695 F. App'x 516, 521 (11th Cir. 2017).  SSR 16-3p provides for a two-step process:

> Step one is to determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. Step two is to evaluate the intensity and persistence of an individual's symptoms, such as pain, and determine the extent to which an individual's symptoms limit her ability to perform work-related activities.

Contreras-Zambrano v. Soc. Sec. Admin., Comm'r, 724 F. App'x 700, 703–04 (11th Cir. 2018). The ALJ is not required to develop the record further if "objective medical evidence clearly establishes that an individual's symptoms are due to a medically determinable impairment." SSR 16-3p, 2017 WL 5180304, at *4.

Here, the ALJ appropriately applied SSR 16-3p in his subjective symptom evaluation, before he proceeded to his RFC determination.  R. 14.  At the first step of the SSR-16-3p two-step process, the ALJ found "Plaintiff's medically determinable impairment could reasonably be expected to cause the alleged symptoms[.]"  Id.  Therefore, SSR 16-3p's requirement to further develop the record was not triggered.  Plaintiff cites portions of SSR 16-3p that tell an ALJ how to handle a "lack of treatment" for an impairment.  Doc. 17 at 5.  However, those portions of 16-3p do not apply here because the ALJ did not base his findings on any "lack of treatment."

Plaintiff appears to argue SSR 16-3p required the ALJ to develop the record at step four of the disability determination process, during the RFC determination, because the ALJ relied

only on a subjective symptom evaluation to formulate an RFC.  Doc. 19 at 2.  However, Plaintiff

provides no authority suggesting SSR 16-3p should be extended to the context of the step four

RFC determination.  See Bailey v. Saul, No. CV 1:19-1998, 2020 WL 6292800 (D.S.C. May 19,

2020), *report and recommendation adopted,* 2020 WL 5640540 (D.S.C. Sept. 22, 2020)

("Plaintiff appears to confuse the ALJ's duty under SSR 16-3p with a nonexistent requirement to

develop the record for evidence to support a claimant's allegations.).  Furthermore, the ALJ did

not rely only on an analysis of Plaintiff's symptoms; the ALJ also considered an eye examination

and state agency medical consultations.  R.  14–15.  Accordingly, SSR 16-3p did not require the

ALJ to further develop the record, and there exists no other conflict, ambiguity, or insufficiency

in the record evidence requiring the ALJ to further develop the record.

### V.    The ALJ Appropriately Relied on the Vocational Expert's Testimony

Plaintiff argues the ALJ's RFC determination at step four conflicts with his disability

determination at step five.  Doc. 17 at 5–7.  Plaintiff explains the ALJ determined, at step four,

Plaintiff was limited to jobs not requiring good depth perception.  Id. at 5.  However, at step five,

the ALJ relied on the vocational expert's ("VE") testimony that an individual with Plaintiff's

limitations could perform jobs requiring frequent reaching and handling.  R. 16.  The VE

testified an individual with Plaintiff's RFC limitations would be able to perform representative

occupations such as cleaner II, counter supply worker, and laundry aide.  Id.  Plaintiff argues

these jobs require frequent reaching and handling according to The Dictionary of Occupational

Titles ("DOT"), but Plaintiff testified he sometimes struggles to reach objects.  Doc. 17 at 6.

Plaintiff contends the DOT definitions of these jobs "appears flawed" because the definitions

provide depth perception is not required for them.  Id. at 7.  Plaintiff argues the ALJ should have

elicited testimony from the VE about this issue.  Id.

The Commissioner responds there was no apparent conflict between the <u>DOT</u> and VE testimony, so there was no requirement for the ALJ to identify and resolve any conflict in his decision.  Doc. 18 at 9–10.  The Commissioner argues Plaintiff's assessment of the <u>DOT</u> definitions is inappropriate because Plaintiff's assessment is based on speculation and contradicts the plain language in the <u>DOT</u>.  <u>Id.</u> at 10–11.

At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant "can make an adjustment to other work."  20 C.F.R. § 404.1520(a)(4)(v).

> Essentially, the ALJ must determine if there is other work available in significant numbers in the national economy that the claimant has the ability to perform.  If the claimant can make the adjustment to other work, the ALJ will determine that the claimant is not disabled.  If the claimant cannot make the adjustment to other work, the ALJ will determine that the claimant is disabled.

<u>Phillips</u>, 357 F.3d at 1239.  The ALJ "bears the burden of demonstrating that, in light of the claimant's residual functional capacity, a significant number of jobs that the claimant can perform exist in the national economy."  <u>Gaskin v. Comm'r of Soc. Sec.</u>, 533 F. App'x 929, 930 (11th Cir. 2013) (citing <u>Jones v. Apfel</u>, 190 F.3d 1224, 1228 (11th Cir. 1999), and 20 C.F.R. § 404.1520(a)(4)(v), (g)(1)).  "An ALJ may determine whether a claimant has the ability to adjust to other work in the national economy by either applying the grids or using a vocational expert."  <u>Mabrey v. Acting Comm'r of Soc. Sec. Admin.</u>, 724 F. App'x 726, 730 (11th Cir. 2018) (citing <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1239–40 (11th Cir. 2004)).  "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."  <u>Wilson v. Barnhart</u>, 284 F.3d 1219, 1227 (11th Cir. 2002).

"[T]he ALJs within the SSA have an affirmative duty to identify apparent conflicts between the testimony of a Vocational Expert and the DOT and resolve them." Washington v. Comm'r of Soc. Sec., 906 F.3d 1353, 1356 (11th Cir. 2018) (citing SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000)). "During or after the hearing, the ALJ is expected to take notice of apparent conflicts, even when they are not identified by a party, and resolve them." Id. at 1363. An apparent conflict is a "conflict that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony." Id. at 1365. However, "if there is 'potential tension' between Plaintiff's limitations and [a DOT job definition], that tension does not mean an 'apparent' conflict exists. Larry v. Comm'r of Soc. Sec., No. 8:21-CV-528, 2022 WL 2128802, at *5 (M.D. Fla. June 14, 2022) (citing Buckwalter v. Acting Comm'r of Soc. Sec., 5 F.4th 1315, 1323 (11th Cir. 2021)).

In this case, there is no conflict whatsoever between the DOT definitions of cleaner II, counter supply worker, or laundry aide[2] and the VE's testimony. The DOT definitions of all three of these jobs expressly exclude a requirement for depth perception. Cleaner II, DICOT 919.687-014; Counter-supply Worker, DICOT 319.687-010; Cleaner, Hospital, DICOT 323.687-010 ("Depth Perception: Not Present - Activity or condition does not exist"). The VE testified these were examples of jobs available to a "hypothetical individual [whom] would have no jobs requiring good depth perception [or] peripheral vision with eyeglasses in place." R. at 77. Thus, the DOT confirms these three jobs do not require depth perception, and the VE testified someone without good depth perception could perform these jobs. There is no conflict or even any

---

[2]   There does not appear to be a DOT entry with the title "laundry aide." The entry the VE cites bears the title "cleaner, hospital." The Court presumes the VE refers to "cleaner, hospital" as a "laundry aide" because the rest of the DOT definition is consistent with the VE's description of the job. Importantly, the entry for "cleaner, hospital" excludes the depth perception requirement. Plaintiff shares this presumption. Doc. 17 at 6 n.2.

tension between the DOT definitions (excluding a depth perception requirement) and the VE testimony (providing an individual without depth perception could do these jobs).

Plaintiff questions the "logical consistency" between the DOT requirements for constant reaching and handling in these jobs and the VE's testimony someone without good depth perception can perform them.  Doc. 17 at 7.  This argument ignores the full context of the DOT definitions, particularly the express exclusion of a depth perception requirement, as discussed above.  However, setting that aside, the difference between the reaching and handling requirements and the VE's testimony does not rise to the level of a reasonably ascertainable apparent conflict.  "[A] conflict is apparent if a reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case."  Washington, 906 F.3d at 1365.  The apparent conflict identified in Washington was between a DOT requirement for "frequent fingering" as a bagger or a table worker, and a VE's testimony bagger and table workers jobs were available to someone limited to "occasional fingering."  The difference between a reaching and handling requirement and a depth perception limitation is not so apparent, to the extent there is any difference.

The Commissioner's citation to Christmas v. Comm'r of Soc. Sec., 791 F. App'x 854 (11th Cir. 2019), is helpful.  The plaintiff in Christmas alleged the ALJ had a duty to resolve an apparent conflict with the DOT because the VE testified the plaintiff could perform a fruit distributor job.  Id. at 857.  The plaintiff argued this was a "fast-paced assembly line job," for which her RFC provided a limitation.  Id.  However, the DOT did not discuss the pace of a fruit distributor job.  Id.  The court held, "Washington does not require the ALJ to draw inferences about job requirements that are unsupported by the DOT's text and then resolve conflicts between the VE's testimony and those unsupported inferences."  Id.  On the other hand, a district

court found an apparent conflict in <u>Chavez-Fuentes v. Saul</u>, 1:18-CV-20765, 2020 WL 5646600 (S.D. Fla. Aug. 27, 2020), *report and recommendation adopted,* WL 5644888 (S.D. Fla. Sept. 22, 2020).  In <u>Chavez-Fuentes</u>, the plaintiff argued the DOT definition of jobs requiring "[e]xerting up to 20 pounds of force occasionally" conflicted with the VE's testimony an individual limited to lifting ten pounds with his left hand could perform such jobs.  <u>Id.</u> at *8.  The court reasoned that, unlike the alleged conflict in <u>Christmas</u>, no inference was necessary to find an apparent conflict, because the ALJ did not need read anything into the DOT definition to ascertain an apparent conflict between a requirement to lift twenty pounds and a limitation of lifting ten pounds with one's left hand.  <u>Id.</u> at *9.  <u>See also</u> <u>Roussin v. Comm'r of Soc. Sec.</u>, 2:20-CV-905, 2021 WL 6205948, at *19 (M.D. Fla. Dec. 16, 2021), *report and recommendation adopted,* 2022 WL 19698 (M.D. Fla. Jan. 3, 2022) (finding apparent conflict between DOT job definition stating "[w]orkers usually must stand for hours at a time," and VE testimony an individual with a limitation to "alternate sitting and standing in maximum of 30-minute intervals" could perform such a job); <u>Dillon v. Saul</u>, 8:19-CV-1277, 2020 WL 5640770, at *4 (M.D. Fla. Sept. 22, 2020) (finding apparent conflict between DOT job definitions referencing conveyors or conveyor belts, and VE testimony an individual with a limitation on assembly line work could perform such jobs; <u>Knapp v. Kijakazi</u>, CA 21-0394, 2022 WL 1019988, at *5–6 (S.D. Ala. Apr. 5, 2022) (finding apparent conflict between DOT job definitions requiring "light work" and "walking or standing to a significant degree," and VE testimony an individual with a four-hour walking or standing limitation could perform such jobs); <u>Harman v. Berryhill</u>, CV 18-00078, 2019 WL 1403299, at *8–9 (S.D. Ala. Mar. 28, 2019) (finding apparent conflict between DOT job definition requiring "heavy exertion of fifty to one-hundred pounds of force," and VE testimony such a job was "light exertion").

In this case, the inference of a depth perception requirement into the DOT definitions is necessary to find a conflict with the VE testimony.  While there might be some tension between a depth perception limitation and a reaching and handling requirements—in that it might be difficult to reach for some things with impaired depth perception—that does not constitute a conflict such that the limitation would prevent altogether an individual without depth perception from performing that function.  Further, the express exclusion of a depth perception requirement in the DOT definitions weighs strongly against reading in such a requirement.

Plaintiff alleges a conflict between his testimony that he struggles to reach for objects and the reaching and handling requirements of the jobs identified by the VE.  Doc. 17 at 7 ("[T]he ALJ's discussion is insufficient to reconcile the issue—namely, the resolution of the facts that Plaintiff struggled specifically with reaching for objects and that the jobs found at Step Five appear to require just such activity . . . .").  However, this comparison skips a step, because the ALJ did not determine Plaintiff had any RFC limitations for reaching or handling.  In fact, the ALJ posed a second hypothetical to the VE about an individual who "would not be able to appreciate or avoid certain moving objects, open doors, boxes on floors, those types of hazards . . . ."  The VE testified an individual with those limitations "would be precluded from the majority of the cleaner and counter supply worker positions."  Id. at 78.  However, the second hypothetical does not reflect the limitations the ALJ ultimately included in his RFC determination.  R. at 13–14.  The ALJ accounted for Plaintiff's testimony but did not include limitations for reaching or handling.  R. 13–15.  Any discrepancy between Plaintiff's testimony about his symptoms and the jobs identified by the VE is immaterial.  See McCutcheon v. Comm'r of Soc. Sec., No. 8:19-CV-3023, 2021 WL 268197, at *3 (M.D. Fla. Jan. 27, 2021). ("But Plaintiff's argument conflates the ALJ's duty to resolve conflicts between the VE's

testimony and the DOT, recognized in <u>Washington</u>, into a duty to resolve *any* conflict.  The holding in <u>Washington</u> does not stretch that far.").

Plaintiff's argument for ALJs to "use commonsense to identify deficiencies in the DOT and inquire about them" is unconvincing, because there is no indication the ALJ failed to use commonsense.  Doc. 19 at 3.  Plaintiff suggests the ALJ should have drawn a "commonsense" inference that certain jobs require depth perceptions, but this inference is not only unsupported by the <u>DOT</u>'s text, but it also directly contradicts the <u>DOT</u>'s text.  The ALJ found the basis of the VE's testimony in his education and field experience was sufficient to overcome any issue not addressed in the <u>DOT</u>.  R. 16.  "Commonsense" does not dictate that the cleaner II, counter supply worker, or laundry aide jobs require depth perception in contradiction with both the VE testimony and the <u>DOT</u>.  <u>See</u> <u>Boone v. Saul</u>, No. 8:19-CV-2637, 2021 WL 252214, at *5 (M.D. Fla. Jan. 26, 2021) ("The ALJ was not required to read certain requirements into the job descriptions to determine if a conflict was present.").  The ALJ appropriately relied on the VE's testimony; therefore, no remand is required for the ALJ to elicit more evidence.

## VI.   The ALJ's Subjective Symptom Evaluation Is Supported by Substantial Evidence

Plaintiff argues the ALJ "failed to duly consider the complaints that Plaintiff was making and to duly inquire into evidence for and against the complaints."  Doc. 17 at 9.  Plaintiff argues the ALJ's rationale for rejecting Plaintiff's subjective complaints does not address depth perception or activities and is based entirely on a single eye exam.  <u>Id.</u> at 8.  The Commissioner argues the ALJ evaluated the eye exam along with prior administrative medical findings, constituting substantial evidence.  Doc. 18 at 12–15.

"An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability."  42 U.S.C. § 423(d)(5)(A).  Rather, "there must be medical signs and

findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence . . . would lead to a conclusion that the individual is under a disability." Id.  In evaluating the intensity and persistence of a claimant's symptoms and determining the extent to which they limit work capacity, an ALJ considers "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence." 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  Pertinent evidence includes evidence of daily activities; the location, duration, frequency, and intensity of pain and other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; treatment other than medication for relief of pain or other symptoms; and measures taken to relieve pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  If an ALJ fails to credit a claimant's testimony about his symptoms, the ALJ "must articulate explicit and adequate reasons for doing so." Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  This process is called a subjective symptom evaluation and is meant to assess whether a claimant's self-described limitations are consistent with and supported by the record.  SSR 16-3p.

The record shows Plaintiff made subjective statements about his symptoms, but the ALJ concluded the medical evidence did not fully support Plaintiff's testimony.  At the hearing, Plaintiff testified he needed glasses, and his vision is worsening.  R.  66.  Plaintiff testified his hand-eye coordination and depth perception made him uncomfortable operating a machine at his job and gave him trouble with other routine acts, like pouring liquid in a glass, parking a car,

picking up puzzle pieces from a tabletop, walking around an unfamiliar space, and walking long distances.  Id. at 70–71.  Plaintiff also complained of headaches.  Id. at 73.  The ALJ, in his decision, noted Plaintiff's testimony but stated the medical evidence did not support Plaintiff's statements "about the intensity, persistence, and limiting effect of his symptoms[.]"  Id. at 14.  The ALJ cited an eye examination "reveal[ing] the claimant was blind in his left eye but had 20/20 corrected vision in his right eye."  Id.  The ALJ also cited state agency records "opin[ing] the claimant's vision was nonsevere and there was insufficient evidence to determine the severity of the claimant's impairments."  Id. at 15.

The subjective symptom evaluation is wholly "the province of the ALJ."  Mitchell v. Comm'r of Soc. Sec., 771 F.3d 780, 782 (11th Cir. 2014) (citing Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005)).  Reviewing courts "will not disturb a clearly articulated [subjective symptom evaluation] supported by substantial evidence."  Id. (citing Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995)).  "[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision," as long as the decision is not so broad as to prevent a reviewing court from concluding the ALJ "considered [the claimant's] medical condition as a whole."  Mitchell, 771 F.3d at 782.  When evaluating subjective complaints, "the question is not whether or not the ALJ could have reasonably considered Plaintiff's complaints, but rather, 'whether the ALJ was clearly wrong to discredit' them."  Spencer v. Kijakazi, No. CV 121-056, 2022 WL 18107085, at *4 (S.D. Ga. Dec. 5, 2022), report and recommendation adopted, 2023 WL 25368 (S.D. Ga. Jan. 3, 2023).

The ALJ appropriately considered Plaintiff's subjective complaints and found the severity of those complaints was unsupported by the objective medical evidence.  The ALJ discussed the eye exam showing "Plaintiff was blind in his left eye but had 20/20 corrected vision in his right

eye." R. 14.  The ALJ then discussed records of state agency medical consultations.[3]  Id. at 15.

The ALJ explained the state medical consultants opined Plaintiff's vision impairment was non-

severe but noted they did not evaluate Plaintiff's testimony.  The ALJ ultimately determined

Plaintiff's vision impairment was severe, diverging from the state medical consultants findings,

to Plaintiff's benefit.  Id.  Plaintiff points to no contradictory medical evidence.  The ALJ's

assessment of Plaintiff's complaints was not a broad rejection, as he credited Plaintiff's

testimony in determining he had severe impairment with limitations.  The eye exam and state

medical consultations, with no contradictory evidence, are substantial evidence to support the

ALJ's determination, and this Court cannot disturb it.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **AFFIRM** the ALJ's decision.  I

also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the

appropriate judgment of dismissal.

Any objections to this Report and Recommendation shall be filed within 14 days of

today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate

Judge failed to address a contention raised in the Complaint must be included.  Failure to file

timely, written objections will bar any later challenge or review of the Magistrate Judge's factual

findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't

Station #4, No. 17-11264, 2020 WL 6039905, at *4 (11th Cir. Oct. 13, 2020).  To be clear, a

party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions

---

[3]     Plaintiff argues the ALJ did not rely on the state medical consultations in his decision, so the
Commissioner's reliance on them in response is an impermissible *post hoc* rationale.  Doc. 19 at 3.
However, the ALJ did rely on this evidence in his written decision, and he expressly discussed the state
medical consultations within his subjective symptom analysis.  R. 15.  This is not a *post hoc* rationale.

on appeal by failing to file timely, written objections.  <u>Harrigan</u>, 2020 WL 6039905, at *4; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 4th day of August, 2023.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA
